UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                           :
CHARLES WALKER,                            :
                                           :    **MEMORANDUM**
                         Petitioner,       :    **DECISION AND ORDER**
                                           :
            - against -                     :    08-CV-1254 (BMC)
                                           :
WILLIAM BROWN, Superintendent, Eastern     :
Correctional Facility                       :
                                           :
                         Respondent.       :
                                           :
------------------------------------------------------------ X

**COGAN**, District Judge.

      This matter is before the Court on petitioner's § 2254 petition for a writ of

habeas corpus. For the reasons set forth below, the Court dismisses the petition.

## BACKGROUND

      Petitioner was charged with six counts in connection with the burglaries of three

homes in Queens County between late November and early December 2003. He was

alleged to have burglarized the homes and sold items taken in those burglaries at Canal

Buy and Sell, a local pawn shop owned by Julio Pomarico (the "pawn shop").

      Mahmuda Hoque was out of her home between 11:15 a.m. and 1:30 p.m.; when

she returned, her house had been ransacked, and she immediately noticed missing jewelry

and money. Several weeks later, Hoque noticed that her camera was also missing.

Although she could not confirm that the camera was taken during the burglary, Hoque

was able to identify the Minolta camera that the police recovered from the pawn shop

several weeks later as being her missing camera. Additionally, developed pictures from

the camera depicted Hoque's son. The pawn shop receipt indicates that the camera was

brought in and sold by petitioner. Pomarico also identified petitioner as the person who sold the camera.

Nine days after the Hoque burglary, the Suratwala family was moving into their new home and left the house unoccupied and unlocked for an eight-hour period. When they returned home, they noticed many missing items, including a television, two unique statues – an eagle and a Native American Indian – and a pair of shoes. The television and two statues were subsequently found at the pawn shop, and Pomarico stated that they were sold by petitioner. A printed receipt corroborated Pomarico's statement. Pomarico also stated that petitioner attempted to sell a pair of shoes at that time, but Pomarico did not accept the shoes. Although petitioner told Pomarico that the items had belonged to his recently deceased brother, Mr. Jugmohan Suratwala and his son, Dr. Sanjeeve Suratwala, were both able to identify the statues and television as being the property that was stolen from their home.

Janet Sukhram was the third burglary victim; taken from her home were watches, jewelry, a video camera, a regular camera, and cash. The same day as the Sukhram burglary, petitioner went to the pawn shop and tried to sell six watches. Pursuant to an earlier request from Police Officer Louis Merensky,[1] Pomarico called the police to inform them that petitioner was at the pawn shop. When Officer Merensky arrived, petitioner told him that he was there to buy a battery for his girlfriend's watch. Petitioner then pushed the rest of the watches towards the store clerk and told Officer Merensky that

---

[1] During a routine patrol, Officer Merensky, who was part of a burglary task force, noticed the two unique statues in the pawn shop. He was then able to determine that similar statues had recently been stolen in a nearby precinct. Office Merensky then went back to the pawn shop and learned that the statues were sold by petitioner. At that time, Officer Merensky collected the items that petitioner recently sold and requested that Pomarico call him the next time petitioner came to his store.

they were not his watches. Officer Merensky then arrested the petitioner. Sukhram later identified one of the watches as one that was stolen in the burglary.

Prior to jury selection in petitioner's trial, the trial court addressed <u>Sandoval</u> issues raised by petitioner's criminal record. <u>See</u> <u>People v. Sandoval</u>, 34 N.Y.2d 371, 377, 357 N.Y.S. 2d 849 (1974) (allowing trial judge to make advance rulings as to the use of prior criminal acts to impeach a defendant's credibility). The court (1) precluded the prosecution from questioning defendant about two misdemeanor convictions, four bench warrants, and a violation of an order of protection; (2) allowed the prosecution to question defendant about three other bench warrants, his use of two different dates of birth and an alias, and his most recent felony conviction; (3) issued a compromise ruling regarding four other felony and misdemeanor convictions (<u>i.e.</u>, the prosecution could ask defendant either about the facts of the case or the conviction, but not both); and (4) reserved decision on one other felony conviction.

At trial, the prosecution introduced sales receipts indicating that petitioner had brought the stolen items into the pawn shop and sold them, as well as Pomarico's identification of petitioner as being the person who engaged in those transactions. Pomarico, however, could not identify petitioner as he sat in the courtroom; rather, he could only identify him in an arrest photo. The trial court allowed the prosecution to show Pomarico the arrest photo after the Court determined that petitioner's appearance had significantly changed and after the prosecution elicited testimony that Pomarico had interacted with petitioner on four or five occasions, had asked for photo identification each time, and had had ample time to speak with and observe petitioner on each of those occasions. Upon viewing the photograph, Pomarico identified the man in the picture as

3

being Charles Walker, the same man who had sold him the camera, television, statues, and watch.

The jury found petitioner guilty on all six counts. Petitioner moved pursuant to N.Y. C.P.L. § 330.30 to set aside the verdict and to dismiss the indictment on the grounds that the evidence was legally insufficient and the indictment was obtained improperly. Specifically, petitioner argued that a faxed affidavit from Dr. Suratwala, which was allegedly presented to the Grand Jury, was dated December 12, 2003, one day after the Grand Jury returned its indictment. The District Attorney's office responded that its fax machine was broken during the time period in question and that the date appearing at the top of the faxed affidavit was not accurate.

The trial court denied the § 330.30 motion and sentenced petitioner to a determinate sentence of seven years for each burglary, one year for each count of possession of stolen property, and five years of post-release supervision. The sentences for the Hoque and Suratwala burglaries were to be served consecutively with each other and consecutively with an unrelated two to four year sentence that petitioner was already serving. The remaining sentences were to be served concurrently.

Petitioner, through his attorney, filed a direct appeal on two grounds: (1) there was insufficient evidence to support a conviction on the Hoque burglary; and (2) the use of an arrest photo as the basis of an in-court identification was blatantly suggestive and denied petitioner his right to a fair trial. Petitioner also filed a pro se supplemental brief, raising several additional claims: (1) the indictment was defective; (2) the prosecution committed misconduct in the grand jury proceedings; (3) trial counsel provided ineffective assistance; (4) the evidence was legally insufficient to support any of the

charges; (5) the trial court committed several reversible errors; and (6) the sentences were punitive and excessive.

The Appellate Division affirmed petitioner's conviction, finding all of his claims to be meritless and/or unpreserved for appeal, and the Court of Appeals denied leave to appeal. People v. Walker, 35 A.D.3d 512, 826 N.Y.S. 2d 142 (2d Dep't 2006), leave to appeal denied, 8 N.Y.3d 928, 834 N.Y.S. 2d 518 (table), reconsideration denied, 9 N.Y.3d 852, 840 N.Y.S. 2d 779 (2007).

Petitioner also filed a § 440.10 motion to vacate his conviction, asserting claims of prosecutorial misconduct, trial court error, and ineffective assistance of counsel. The trial court denied his § 440.10 motion, finding that his claims were all procedurally barred. Petitioner requested permission to appeal this decision; the Appellate Division denied petitioner's application for leave to appeal.

Petitioner, proceeding pro se, also filed a writ of error coram nobis alleging ineffective assistance of appellate counsel, which the Appellate Division denied, and the Court of Appeals denied leave to appeal. People v. Walker, 45 A.D.3d 787, 844 N.Y.S. 2d 903 (2d Dep't 2007), leave to appeal denied, 10 N.Y.3d 818, 857 N.Y.S. 2d 51 (2008).

## DISCUSSION

In his § 2254 petition, petitioner has asserted seven grounds for relief: (1) the evidence was legally insufficient to support his conviction; (2) the trial court committed reversible error by allowing the prosecution to use the single arrest photograph to obtain an in-court identification; (3) the conviction was achieved through fraud, misrepresentation, and misconduct by the prosecutor; (4) he received ineffective assistance of trial counsel; (5) the trial court committed several reversible errors and

denied him a fair trial; (6) the sentence imposed was punitive; and (7) he received ineffective assistance of appellate counsel.

### 1. *Insufficiency of the evidence claims*

Petitioner has raised two claims pertaining to the sufficiency of the evidence: (1) the evidence establishing that petitioner pawned a camera two days after the camera owner's home was burglarized was insufficient to support his conviction for the Hoque burglary; and (2) the evidence at trial was insufficient to support the remaining counts, as the prosecution failed to prove every element of each count.

In affirming petitioner's conviction, the Appellate Division held: "Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt . . . [and] we are satisfied that the verdict of guilt was not against the weight of the evidence." Walker, 35 A.D.3d at 512 (internal citations omitted). Because the state court rejected petitioner's insufficient evidence claims on the merits, this Court's habeas review is limited to whether the state court's determination was contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1); Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2003).

When challenging a state conviction on the ground that the evidence was legally insufficient, a petitioner bears a substantial burden in convincing a federal court to grant habeas relief. See United States v. Soto, 716 F.2d 989, 991 (2d Cir. 1983). Indeed, the Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443

U.S. 307, 319, 99 S. Ct. 2781 (1979) (emphasis in original). This Court is required to draw all inferences in favor of the prosecution. See Fama v. Commissioner of Correctional Services, 235 F.3d 804, 811 (2d Cir. 2000).

In evaluating the sufficiency of the evidence supporting a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). In cases involving stolen property, such as robberies and burglaries, New York utilizes a "recent and exclusive possession presumption," which provides that "evidence of unexplained or falsely explained possession of recently stolen property is sufficient to establish a prima facie case and to enable a jury to find guilt beyond a reasonable doubt." People v. Baskerville, 60 N.Y.2d 374, 382, 469 N.Y.S. 2d 646 (1983). In other words, "the recent possession of the fruits of crime is evidence of the crime itself, as of robbery, burglary." Knickerbocker v. People, 43 N.Y. 177, 181 (1870).

If a defendant is able to provide a reasonable explanation for possessing the stolen property, or if there is reasonable evidence to suggest that the defendant received the stolen property from another person, then a jury may conclude that the defendant was a part of the underlying theft or merely received the stolen property from someone else. See Baskerville, 60 N.Y.2d at 382-83. However, if there is no evidence showing that a defendant received the stolen property from someone else, or if a defendant makes no attempt to explain the possession or provides a false explanation, then a jury may infer that he was the thief. Id. See also, e.g., People v. Everett, 10 N.Y.2d 500, 508-10, 225 N.Y.S. 2d 193 (1962). This inference, if accepted by a jury, is sufficient to find a defendant guilty beyond a reasonable doubt. See, e.g., Baskerville, 60 N.Y.2d at 382;

7

People v. Shurn, 69 A.D.2d 64, 68, 418 N.Y.S.2d 445 (2d Dep't 1979) (holding that the inference is "sufficient to constitute prima facie proof of the identity of the possessor as the perpetrator of the crime").

In this case, viewing the evidence most favorably to the prosecution, there was sufficient evidence for the jury to find petitioner guilty of all counts by applying the recent and exclusive possession inference. After each of the three burglaries, petitioner sold property at the pawn shop that was later identified by one of the three victims. The sales to the pawn shop were shortly after each burglary, there was compelling evidence that petitioner had stolen the property, and petitioner either gave no explanation or false explanations as to how he came into possession of the property. Cf. People v. Combo, 275 A.D.2d 936, 937, 713 N.Y.S.2d 414 (4th Dep't 2000) (holding that ten days between a burglary and discovered possession "is not so long a period as to vitiate the inference as a matter of law"); see also Baskerville, 60 N.Y.2d at 382-83; Shurn, 69 A.D.2d at 68.

### 2. *Improper in-court identification claim*

Next, petitioner has claimed that the trial court committed reversible error by allowing the prosecution to use an arrest photograph to elicit an in-court identification after Pomarico was unable to identify the petitioner as he sat in court. The Appellate Division denied the claim on its merits, holding that "[t]he identification of the defendant by a witness was merely confirmatory and not the product of a suggestive police procedure." Walker, 35 A.D.3d at 513. Again, because the state court rejected petitioner's claims regarding the suggestiveness of the identification on the merits, this Court's habeas review is limited to whether the state court's determination was contrary

to, or an unreasonable application of, clearly established federal law. See Sellan, 261 F.3d at 311-12.

The Second Circuit recently reiterated the appropriate inquiry a district court must undertake when analyzing a § 2254 challenge to an eyewitness identification. See Brisco v. Ercole, 565 F.3d 80, 88-95 (2d Cir. 2009). First, the Court must "determine whether the . . . identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator." Id. at 88 (quoting Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001), cert. denied, 534 U.S. 1118 (2002)). If the procedures were not suggestive, then the identification evidence is permissible, and the Court's inquiry ends. Id. However, if the Court finds that the procedures were unnecessarily suggestive, the Court must "then determine whether the identification was nonetheless independently reliable." Id. Thus, identification evidence "will be admissible if (a) the procedures were not [unnecessarily] suggestive or (b) the identification has independent reliability." Id.

The Supreme Court has held that reliability is "the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243 (1976). The Court in Manson discussed several factors that should be considered when evaluating reliability, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Id. (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375 (1972)). The Court also held that "[a]gainst these factors is to be weighed the corrupting effect of the suggestive identification itself." Id. Although Manson and Biggers involved pretrial identifications, the Second Circuit has

applied the rationale supporting those cases to instances of in-court identifications. See Kennaugh v. Miller, 289 F.3d 36, 46-47 (2d Cir. 2002).

Here, although the identification method in question may have been suggestive, it did not "unduly and unnecessarily suggest" that petitioner committed the burglaries in question. Brisco, 565 F.3d at 88. It is undisputed that the witness, Pomarico, interacted with petitioner on multiple occasions, including on the day of each burglary. Pomarico not only observed petitioner on each occasion, but he also engaged in extensive negotiations with him about the appropriate price of his property. Further, Pomarico reviewed petitioner's driver's license each time and he completed a pawn slip for each transaction, which included petitioner's name and other pertinent information. The testimony also indicates that Pomarico recognized petitioner on the day he attempted to sell one of Sukhram's watches as the same man who was in the store on two prior occasions. In sum, Pomarico had a significant amount of time to observe and interact with petitioner.

Despite this history, Pomarico was unable to identify petitioner as he sat in court. Notably, as determined by the trial court, petitioner's appearance had changed significantly between the dates of the incidents and the trial. Due to petitioner's significant change in appearance, the trial court decided that it would be fair to allow the prosecution to use petitioner's arrest photo to illicit an in-court identification, provided that Pomarico had sufficient familiarity with petitioner and the photograph was taken at a time close to the incident. The prosecution then questioned Pomarico and developed a strong foundation establishing his familiarity with petitioner. Once this foundation was developed, the trial court then allowed Pomarico to view the arrest photograph, and

Pomarico identified the individual in the photograph as Charles Walker, the person that sold him the stolen property. This is an acceptable use of an arrest photograph for identification purposes at trial. See, e.g., United States v. Holmes, 632 F.2d 167, 169 (1st Cir. 1980) (holding that an arrest photograph "was relevant because the defendant's appearance changed drastically between the time of his arrest and the time of trial, and thus the photograph helped witnesses identify the alleged perpetrator of the crime."); United States v. Cochran, 697 F.2d 600, 608 (5th Cir. 1983).

Even assuming arguendo that the trial court did err in allowing the use of the arrest photograph, any such error would be harmless. The Second Circuit has held that an improper identification procedure may be harmless error if the weight of the other evidence would still substantially support the conviction. See, e.g., Kennaugh, 289 F.3d at 47-48; Raheem v. Kelly, 257 F.3d 122, 140-143 (2d Cir. 2001). In this case, petitioner's conviction did not depend on the in-court identification. In fact, petitioner's attorney, during opening statements, conceded that petitioner was present at the pawn shop. Further, the police arrested petitioner while he was still present at the pawn shop. The pawn slips also indicated that petitioner was the person who sold the stolen goods; those slips referenced petitioner's name, driver's license number, and contained his signature. Prior to petitioner's arrest, Pomarico also informed the police that petitioner was the individual who sold the property in question – namely, the camera, television, statues, and watch. In sum, the Court finds that there was overwhelming evidence suggesting that petitioner was indeed the person who sold the stolen property at the pawn shop; the conviction therefore turned on the jury's acceptance of the recent and exclusive

possession inference, and any trial court error in allowing the use of a single arrest photo was harmless.

### 3. *Prosecutorial misconduct claim*

Next, petitioner has asserted that the prosecutor deprived him of his right to a fair trial by (1) substituting Mr. Suratwala for Dr. Suratwala as a trial witness, as only Dr. Suratwala's name was on the witness list; (2) not presenting Dr. Suratwala's sworn affidavit to the Grand Jury (because Dr. Suratwala's affidavit was allegedly faxed to the DA's office one day after the Grand Jury voted to indict petitioner); (3) failing to inform petitioner that a fingerprint was recovered from one of the burglarized residences; and (4) failing to inform petitioner that Dr. Suratwala's affidavit had been presented to the Grand Jury in lieu of having him testify.

As a preliminary matter, respondent has correctly asserted that petitioner did not exhaust his claims that the prosecutor failed to inform him about the fingerprint and failed to inform him that Dr. Suratwala's affidavit was presented in lieu of testimony.[2] Because these claims could have been raised on petitioner's direct appeal, New York law would treat them as procedurally barred if petitioner tried to raise them in state court now. See N.Y. C. P. L. §§ 440.10(2)(c), (3)(c) (McKinney 1994). This Court would have to concur with that determination unless petitioner could show cause for the failure to appeal, and prejudice or deprivation of a fundamental right. See Bossett v. Walker, 41

---

[2] Although petitioner's pro se supplemental brief on appeal states that the prosecutor presented Dr. Suratwala's affidavit in lieu of testimony, it does not ever contend that this conduct was a separate instance of misconduct by the prosecutor. Rather, petitioner's argument in the pro se brief focused on the fact that Dr. Suratwala's affidavit was not sworn and was allegedly faxed the day after the Grand Jury voted to indict. However, in order for a claim to be considered exhausted, the petitioner must have "informed the state court of both the factual and the legal premises of the claim." Daye v. Attorney General of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982). Petitioner's mere mention that the prosecutor used the affidavit in lieu of testimony did not inform the state court of the factual and legal basis for the claim he has now raised, and thus it is unexhausted.

F.3d 825, 828-29 (2d Cir. 1994) (citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497 (1977)). Petitioner has provided no indication that he could meet these requirements. Thus, the Court cannot consider these elements of petitioner's prosecutorial misconduct claim.

Regarding petitioner's claim that the prosecutor failed to present Dr. Suratwala's sworn affidavit to the Grand Jury (which petitioner has exhausted in state court), it is well-settled that claims based on the sufficiency of the evidence presented to a state Grand Jury are not cognizable under federal law and thus are not reviewable in a habeas corpus petition. See, e.g., Davis v. Mantello, 42 Fed. Appx. 488, 491, 2002 WL 1032687, at *2 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."); Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("[F]ederal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, [and] similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court."); Warren v. Ercole, No. 07-CV-3175, 2007 WL 4224642, at *10 (E.D.N.Y. Nov. 27, 2007) ("[C]laims based on the sufficiency of the evidence presented to the grand jury are not cognizable under federal law."). Thus, the Court also cannot review this element of petitioner's prosecutorial misconduct claim.

On petitioner's claim that the prosecution called Mr. Suratwala rather than Dr. Suratwala to testify at trial despite the fact that Dr. Suratwala's name was on the witness list, the Court notes that the state court reached this claim on the merits, and thus this Court's review is again limited to whether the state court's determination was contrary to, or an unreasonable application of, clearly established federal law. See Sellan, 261 F.3d at

311-12. To grant habeas corpus relief on prosecutorial misconduct grounds, the Court must find that the prosecutor's actions "constituted more than mere trial error, and were instead so egregious as to violate [petitioner]'s due process rights." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). This inquiry focuses on "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper [conduct]." Id.

The prosecutor's conduct in calling a witness who was not listed on the witness list did not violate petitioner's due process rights, and thus, the state court's decision was neither contrary to, nor an unreasonable application of, federal precedent. A criminal defendant has no constitutional right to a list of the prosecution's witnesses before trial begins. See United States v. Edwards, 47 F.3d 841, 843 (7th Cir. 1995) ("It is well-settled that the Constitution does not require pretrial disclosure of prosecution witnesses."); Metts v. Miller, 995 F. Supp. 283, 295 n.16 (E.D.N.Y. 1997) (collecting New York cases establishing that a defendant has no Constitutional or statutory right to pretrial identification of the State's witnesses). Furthermore, nothing prevented petitioner from calling Dr. Suratwala as a witness if he desired the jury to hear his testimony. Cf. Metts, 995 F. Supp. at 297 (finding no impropriety in prosecution's failure to call an identified witness to testify at trial due to the witness' purported unavailability because, inter alia, petitioner could have called the witness himself). In light of the other evidence establishing defendant's guilt, it was not misconduct for the prosecutor to call Mr. Suratwala even though his name did not appear on the witness list, or to refrain from calling Dr. Suratwala even though he was listed as a potential witness.

**4. *Ineffective assistance of trial counsel claim***

Next, petitioner has argued that his trial counsel was ineffective because that

attorney (1) failed to prepare for trial; (2) failed to familiarize himself with the affidavit

of Dr. Suratwala that the State submitted to the Grand Jury; (3) failed to familiarize

himself with the laws and statutes applicable to fax transmittals; (4) failed to call defense

witnesses, expert witnesses, and "expert prosecution witnesses pertaining to a latent

fingerprint found at the scene of one of the burglarized residences;" (5) failed to

challenge the State for allegedly "switching witnesses slated to testify;" and (6) failed to

"catch the deception" in the fact that the State called Mr. Suratwala to testify at trial after

presenting Dr. Suratwala's affidavit to the Grand Jury.

Initially, although respondent has contended that petitioner failed to exhaust his

claim that trial counsel failed either to catch or challenge the State's purported

"deception" in calling Mr. Suratwala rather than Dr. Suratwala at trial, the record

demonstrates that petitioner did raise these issues on direct appeal in the state court (on

page 18 of his pro se supplemental brief). Thus, petitioner has exhausted these claims,

and the Court will review them along with the remainder of his points on this ground.

In its decision on petitioner's direct appeal, the Appellate Division stated, "After a

review of the record in its entirety and without giving undue significance to retrospective

analysis, we are satisfied that the defendant received the effective assistance of counsel."

Walker, 35 A.D.3d at 512. Because the state court reached this claim on the merits, the

Court must determine whether the state court's determination on this claim was contrary

to, or an unreasonable application of, the ineffective assistance standard set forth in

Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984). See Williams v.

15

Taylor, 529 U.S. 362, 384-85, 391, 120 S.Ct. 1495 (2000); see also Sellan, 261 F.3d at 311-12. Under Strickland, the appropriate inquiry is whether petitioner had "reasonably effective assistance" of counsel, such that counsel's actions neither (1) fell below an objective standard of reasonableness; nor (2) caused a reasonable probability that the result of the trial would have been different but for counsel's errors. 466 U.S. at 686-95. The Court is mindful that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." See id. at 689-90.

Here, the state court's determination was neither contrary to, nor an unreasonable application of, the Strickland standard. First, contrary to petitioner's assertion, the record makes clear that petitioner's counsel was prepared for trial – he filed pre-trial motions, obtained a pre-trial suppression hearing, and cross-examined witnesses at the suppression hearing; he made a Sandoval application at trial which resulted in the preclusion of questioning on several prior convictions; he made an opening statement at trial in which he set forth the defense's theory that there was insufficient evidence connecting petitioner to the burglaries; he made motions and objections throughout the trial; he effectively cross-examined witnesses during the trial; and his closing argument focused again on the insufficiency of even the circumstantial evidence connecting petitioner to the homes and burglaries in question. Thus, this basis for relief is meritless.

Additionally, the record does not support plaintiff's contention that his counsel failed to familiarize himself with either the affidavit of Dr. Suratwala submitted to the Grand Jury or the "laws and statutes pertaining to facsimile transmittals." Rather, the record demonstrates that petitioner's trial counsel moved to set aside the verdict and

dismiss the indictment on the grounds that the District Attorney had improperly obtained the indictment because the date on the faxed affidavit made it appear as though Dr. Suratwala's affidavit had been faxed one day after the Grand Jury voted to indict petitioner. Petitioner's trial counsel further presented this motion orally at petitioner's sentencing and advanced strong arguments in support of the requested relief. Therefore, this basis for relief is also meritless.

Next, petitioner has asserted that his trial counsel was ineffective because counsel did not call defense witnesses, expert witnesses, and "expert prosecution witnesses." Specifically, petitioner has argued that his counsel failed to call two defense witnesses who could explain how he came to possess the allegedly stolen property, [3] and he did not call an expert witness to testify as to the latent fingerprint recovered from the scene of one of the alleged burglaries. Petitioner has further contended his counsel failed to obtain a handwriting expert to verify the affidavits submitted by Dr. Suratwala and a secretary in the prosecutor's office in opposition to petitioner's motion to set aside the verdict. However, it is well-established that the decision whether to call a witness is a tactical decision within the attorney's discretion, and petitioner has failed to establish that counsel's failure to call these witnesses was unreasonable. See, e.g., United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not

---

[3] Although petitioner's habeas petition does not specify which witnesses he believes his counsel should have called; petitioner argued in his pro se supplemental brief on direct appeal that his counsel failed to call Esperanza Ramirez (presumably petitioner's girlfriend), who allegedly would have testified that she owned the watch petitioner brought to the pawn shop. Additionally, petitioner contended that his counsel also could have called a witness (unnamed by petitioner) who purportedly would have testified that she was present when petitioner purchased all of the items he was charged with stealing. Petitioner's pro se brief asserted that both of these witnesses were present at the Grand Jury hearing and the trial and could have testified on his behalf. However, he presents nothing more than speculation as to the substance of their testimony.

viewed as a lapse in professional representation.") (internal quotation marks and citation omitted); Logan v. Ercole, No. 08-CV-407, 2008 WL 2097439, at *7 (E.D.N.Y. May 20, 2008) (citing Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)).

Additionally, although petitioner has contended that his attorney should have called a fingerprint expert to testify at trial that a latent fingerprint found inside one of the residences did not belong to petitioner or the owner of the home,[4] the prosecutor made clear in her opening statement that she "had no physical evidence linking the [petitioner] to being inside the[] homes." The prosecution further downplayed the importance of fingerprint evidence in her opening statement, summation, and examination of one of the investigating officers. Petitioner's counsel attempted to cross-examine the investigating officer as to whether the latent fingerprint recovered at one of the crime scenes matched petitioner, but the prosecutor objected, and the witness did not answer. In this context, counsel likely made the strategic choice not to call a fingerprint expert, and the Court does not find this tactical decision unreasonable. Furthermore, to the extent that petitioner has challenged counsel's failure to call a handwriting expert to examine the affidavits of Dr. Suratwala and an employee in the prosecutor's office, these affidavits were not submitted until after the conclusion of the trial (in response to petitioner's motion to set aside the verdict), and there was no post-conviction hearing at which counsel could have called such an expert witness to testify.

Lastly, petitioner has claimed that his counsel was ineffective because he failed to realize or challenge the fact that the prosecution called Mr. Suratwala to testify at trial

---

[4] The Court notes the inconsistency in petitioner's claims that the prosecutor "never told the defense that a fingerprint was recovered from one of the burglarized residences," and that his counsel failed to obtain an expert witness to testify as to this latent fingerprint.

when it was Dr. Suratwala whose affidavit had been submitted to the Grand Jury. However, as discussed above, the State was under no obligation to provide a list of its witnesses to defendant or his counsel prior to trial. See Edwards, 47 F.3d at 843; Metts, 995 F. Supp. at 295 n.16. Thus, petitioner's counsel cannot be deemed ineffective for failing to identify any alleged "witness-switching" between the witnesses purportedly "slated to testify" and those who actually testified at the trial. Nor can the Court conclude petitioner's counsel acted unreasonably in failing to challenge Mr. Suratwala's testimony – both Mr. Suratwala and Dr. Suratwala would have served the same purpose at trial (i.e., to testify as to the belongings in his home that were allegedly taken by petitioner, and that petitioner had no permission or authority to enter the home and take any of the property).

### 5. *Trial court reversible errors claim*

Next, petitioner has contended that the trial court erred by: (1) making an improper Sandoval ruling which purportedly "barr[ed] [petitioner] from testifying at the trial;" (2) failing to issue curative instructions to the jury regarding unrelated injuries (two black eyes and a cut under one eye) sustained by petitioner during a weekend break from the trial; (3) improperly questioning Pomarico on the witness stand, thereby allegedly "assuming the role of a prosecutor;" and (4) failing to respond to a jury note.

The Appellate Division ruled against petitioner on the merits of his Sandoval claim. However, it is well-established that a Sandoval decision by a trial court is not reviewable on a habeas corpus petition where, as here, the petitioner did not take the stand to testify in his criminal trial. See, e.g., Celleri v. Marshall, No. 07-CV-4114, 2009 WL 1269754, at *11 (E.D.N.Y. May 6, 2009); Ciochenda v. Artus, No. 06 Civ. 5057,

19

2009 WL 1026018, at *6 (S.D.N.Y. Apr. 9, 2009) (citing Luce v. United States, 469 U.S. 38, 43, 105 S.Ct. 460 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.")).

The Appellate Division further held that petitioner had waived his claim regarding the trial court's failure to issue a curative instruction regarding his injuries[5] and found his remaining contentions "unpreserved for appellant [sic] review and, in any event . . . without merit." Walker, 35 A.D.3d at 513. Because the Appellate Division denied these claims on an independent and adequate state procedural ground, see, e.g., Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (stating claims are considered barred by an independent procedural ground if the Appellate Division finds them unpreserved even where that court also decides the merits in the alternative); Gardner v. Fisher, 556 F. Supp. 2d 183, 193 (E.D.N.Y. 2008) (same), this Court cannot review the claims unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[s] will result in a fundamental miscarriage of justice." Gardner, 556 F. Supp. 2d at 193. Here, petitioner has not asserted that this exception applies, nor does the record give any indication that petitioner could demonstrate cause, prejudice, or a fundamental miscarriage of justice. Thus, the exception to the independent and adequate state procedural bar does not apply, and this ground for habeas relief is also meritless.

---

[5] The record indicates that petitioner's counsel originally requested "that the jury be instructed that if they noticed any injuries of any kind on [petitioner's] face or body, that they should not speculate about this at all. It has nothing to do with this case." However, counsel then stated that he "walked over to the jury box, [and after seeing] what they would be seeing I think it would be better to not even give the jury any kind of instructions along the lines that I was asking to give, because it is just not that noticeable . . . I would rather not draw the jury's attention to something, if it is not necessary." The trial judge accepted the withdrawal of the request and indicated that he would "[a]bsolutely" issue a curative instruction if any jurors brought it to the court's attention that they noticed something about petitioner's appearance.

### 6. *Punitive sentence claim*

Next, petitioner has contended that the trial court "punitively sentenced [him] because [he] exercised his right to go to trial." According to petitioner, prior to the trial the trial judge and the prosecutor "urged [him] to accept a plea bargain offer of five years flat, which was to run concurrent to an unrelated sentence of two to four years." However, after petitioner proceeded to trial and was convicted by the jury, the court sentenced him, inter alia, to two consecutive seven-year terms, running consecutively to the unrelated two to four year term.

Respondent has argued that petitioner failed to exhaust this claim because his brief on direct appeal argued only that his sentence was "punitive and excessive," and he never invoked the Eighth Amendment or stated that his sentence was cruel and unusual. However, regardless of the exhaustion requirement, petitioner is not entitled to relief on this claim.[6] It is well-settled that a habeas petitioner is not entitled to relief when the sentence he received fell within the statutory range for the crime of which he was convicted. See, e.g., White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); Cruz v. Conway, No. 05-CV-4750, 2007 WL 1651855, at *3 (E.D.N.Y. June 6, 2007). Here, the trial court declined to adjudicate petitioner a persistent violent felony offender, but sentenced petitioner as a second violent felony offender. Under N.Y. PENAL L. § 70.04(3)(b), the sentencing range for a second violent

---

[6] The Court notes for the record that petitioner's pro se supplemental brief did not challenge the sentence under the Eighth Amendment. This claim could have been raised on direct appeal, and the state court thus would treat it as procedurally barred if petitioner tried to raise it now. See N.Y. C. P. L. §§ 440.10(2)(c), (3)(c). Furthermore, petitioner has not shown that he could demonstrate either cause for the failure to appeal on this ground, or prejudice or deprivation of a fundamental right. Thus, the Court would have to concur with the state court's determination that the claim is procedurally barred from review. See Bossett, 41 F.3d at 828-29.

felony offender convicted of Burglary in the Second Degree – a class C felony offense –

is between seven and fifteen years. Petitioner's seven-year sentences on each of his

burglary convictions were thus within the acceptable statutory range for the offense, and

he is not entitled to relief on this claim.[7]

Furthermore, to the extent petitioner has attempted to raise a vindictive sentence

claim, there is no evidence in the record that the trial judge imposed the sentence that he

did because petitioner took his case to trial instead of taking the guilty plea. See, e.g.,

Naranjo v. Filion, No. 02 Civ. 5449, 2003 WL 1900867, at *10 (S.D.N.Y. Apr. 16, 2003)

(citing Corbitt v. New Jersey, 439 U.S. 212, 219, 223, 99 S.Ct. 492 (1978) ("We have

squarely held that a State may encourage a guilty plea by offering substantial benefits in

return for the plea . . .We discern no element of retaliation or vindictiveness against

[appellant] for going to trial. There is no suggestion that he was subjected to unwarranted

charges. Nor does this record indicate that he was being punished for exercising a

constitutional right. . . .")).

### 7. *Ineffective assistance of appellate counsel claim*

Finally, petitioner has contended that his appellate counsel was ineffective in

moving for leave to appeal the Appellate Division's denial of his appeal to the New York

Court of Appeals because counsel:  (1) did not argue that the Appellate Division

"circumvented issues" raised by petitioner in his appeal and rendered a decision "contrary

to the facts of the record and of law;" (2) failed to challenge the Appellate Division's

citation of "erroneous case law" and inaccurate statements of the issues in its decision;

(3) failed to challenge the constitutionality of the Appellate Division's ruling; and (4)

---

[7] The Court further notes that the trial court's imposition of consecutive – rather than concurrent –
sentences for each burglary was also acceptable under N.Y. PENAL L. § 70.25(2), because the burglaries
were not "committed through a single act or omission," but rather were three separate incidents.

otherwise presented "erroneous information" to the court. Petitioner has further asserted this his counsel refused to "raise the issue of ill-effective assistance of trial counsel inter alia [*sic*]."

Initially, respondent has argued that petitioner failed to exhaust his claim that appellate counsel was ineffective because he failed to challenge the constitutionality of the Appellate Division's ruling.[8] Respondent has requested that the Court allow petitioner the opportunity to withdraw this claim or dismiss petitioner's entire petition without prejudice to renewal upon exhaustion of this remaining claim in state court. However, the Court declines to allow petitioner to exhaust this claim, and will instead exercise its discretion to deny the unexhausted claim as meritless for the reasons set forth below. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Rhines v. Weber, 544 U.S. 269, 277, 125 S.Ct. 1528 (2005) (holding a district court would abuse its discretion by granting petitioner a stay when his unexhausted claims are plainly meritless).

To the extent petitioner has asserted that he received ineffective assistance of appellate counsel based on counsel's application for leave to appeal the Appellate Division's ruling to the New York Court of Appeals – including his unexhausted claim that his counsel failed to challenge the constitutionality of the Appellate Division's decision in the leave application – the law is clear that such a leave application is a

---

[8] Petitioner has strenuously argued that he did, in fact, exhaust this claim in his coram nobis petition. However, a review of the record demonstrates that although petitioner did argue that his counsel failed to raise constitutional issues that he included in his supplemental pro se brief, he never raised the specific claim that his counsel failed to challenge the constitutionality of the Appellate Division's ruling. Even though these assertions are similar, this is not enough for the Court to conclude that petitioner has exhausted this claim in state court. See Daye, 696 F.2d at 191.

discretionary appeal, and thus the constitutional right to counsel is not implicated. See, e.g., Chalk v. Kuhlmann, 311 F.3d 525, 528 (2d Cir. 2002) (citing Ross v. Moffitt, 417 U.S. 600, 610-11, 94 S.Ct. 2437 (1974); N.Y. C. P. L. §§ 460.20(2), (4)). Because petitioner did not have the constitutional right to counsel on this appeal, his counsel's alleged ineffectiveness on such an appeal does not violate his constitutional rights. See id.; Veras v. Strack, 58 F. Supp. 2d 201, 208-09 (S.D.N.Y. 1999) (finding counsel's failure to advance claims when seeking leave to appeal to the New York Court of Appeals could not form the basis for an ineffective assistance of appellate counsel claim).

To the extent petitioner has asserted that he received ineffective assistance of appellate counsel because counsel did not raise an ineffective assistance of trial counsel claim in the original appeal to the Second Department, the state court denied this claim on the merits.[9] People v. Walker, 45 A.D.3d at 787 ("The appellant has failed to establish that he was denied the effective assistance of appellate counsel."). Thus, this Court's review is again limited to whether that determination was contrary to, or an unreasonable application of, the ineffective assistance standard set forth in Strickland. See Sellan, 261 F.3d at 311-12. The Court must also analyze the state court's determination in light of Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308 (1983), which held that to be effective, appellate counsel is not required to raise every claim that a defendant wants raised. Id. at 752-54.

The state court's ruling was neither contrary to, nor an unreasonable application of, Strickland and Jones. Petitioner's appellate counsel submitted an affidavit to the

---

[9] Petitioner's petition alleges that appellate counsel made this error "inter alia." From this description, it is not entirely clear whether petitioner is referring to his original appeal in the Second Department or to the leave application to the Court of Appeals. In an abundance of caution, the Court has considered this claim as though it pertains to the original appeal.

Appellate Division in response to the coram nobis petition, explaining that he had examined the record in detail and did not raise the ineffective assistance of trial counsel claim because he felt it would be baseless in light of counsel's performance during trial. (Affirmation of David P. Greenberg, Sept. 11, 2007, at ¶¶ 3, 7-10). Indeed, petitioner raised the ineffective assistance of trial counsel claim himself in his supplemental pro se brief on direct appeal, and the Appellate Division denied the claim on the merits. Because appellate counsel "cannot be deemed ineffective for failing to raise a meritless claim," Burnett v. Greiner, No. 02-CV-0641, 2004 WL 1243111, at *12 (E.D.N.Y. Apr. 21, 2004), the Court agrees with the Appellate Division's conclusion that petitioner failed to establish his ineffective assistance claim. Petitioner's claim for ineffective assistance of appellate counsel is meritless.

## CONCLUSION

For the foregoing reasons, petitioner's habeas corpus petition is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, I certify that any appeal from this Order would not be taken in good faith. *See* 28 U.S.C. § 1915(a); Coppedge v. United States, 369 U.S. 438, 444, 82 S.Ct. 917 (1962).

**The Clerk of the Court is directed to mail a copy of this Order to petitioner *pro se*.**
**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
      July 10, 2009